Radcliff, J.
On these pleadings, the question is, whether the disposition made of the plaintiff, by the executors of Samuel Ellis, to the defendant, was a sale, within the '^meaning of the act of the 22d February, 1788,(a) by which “ in order to prevent the further importation of slaves into this state,” it is enacted, that if any person shall sell as a slave within this state, any negro or other person who has been imported or brought into this state, after the 1st June, 1785, he shall be deemed guilty of a public of-fence, and forfeit 10(R. and the person so imported or brought into this state, shall be free.
1. I consider the disposition of the slave, made by the executors as equivalent to an absolute sale. It was probably made in the manner expressed in the indenture, under an apprehension that the condition of the plaintiff came within the description of the act, and with a view to elude the prohibition. It gives to the defendant a complete authority over her as his servant, and unlimited in its duration. It is not only unlimited, at the pleasure of the defendant, but irrevo *83 cable, without the consent of both parties, that is, without a new contract, to rescind the old. This is, to every purpose, a sale. Besides, here are no circumstances to denote a hiring or indenting as a servant, no time for the expiration of the indenture, no right to the return of the slave, or to demand payment for her services, no subsequent responsibility on the part of the executors, for her maintenance, which was expressly assumed by the defendant. In short, no title or control over her, was in any shape retained by the executors, who parted with all their property in the slave. But,
2. I am of opinion, that the sale by the executors was not a sale within the spirit of the act. The objects of the act are sufficiently answered, if it be restrained in its operation to the ordinary traffic or sale of slaves, brought into this state, by persons acting in their own right, and for their own emolument. It ought not to be deemed to apply to those who act involuntarily, for the benefit of others, and in performance of a trust imposed by law. Acting in that ^capacity, they cannot be supposed to incur the guilt ascribed to this traffic, and ought not to be liable for its consequences. In all cases, therefore, of persons acting in autre droit, as executors, assignees of absent or insolvent debtors, sheriffs on sales by execution, and trustees on whom the duty devolves, by the interposition of law, I think the act cannot apply. It would be highly injurious to creditors to extend it thus far, and extremely embarrassing to persons acting in these capacities. What would be their situation and duty in regard to such slaves ? They are not bound to keep them as their own, and if kept as the property of the estate which they represent, it would be impossible to convert them to any valuable purpose, in the execution of the trust, or to calculate the further responsibility which their age or disability might occasion. By selling them, they would incur a heavy penalty, besides the forfeiture of the slaves. It would be better the law should declare the property extinct, and annihilate the right. In the present case the removal of the testator into this state, without a consequent sale by him, created no forfeiture. The property of the slave continued *84 lawfully in him ; and, unless extinguished by his death,-was transmitted to the executors, and became assets in their hands. If so, they had a right to dispose of her for the benefit of the estate of their testator, and the sale was not within the act.
I am, therefore, of opinion, that there should be judgment for the defendant.
Kent, J.
The question raised by these pleadings, is whether the act of the executors in placing the plainuff to service, as stated in the pleadings, be a sale within the act of the 22d February, 1788, which declares, “ that if any person shall sell as a slave within this state, any negro or other person, who has been imported or brought into this state, after the 1st June, 1785, such seller, his factor or agent, shall be guilty of a public offence, and shall forfeit 1001. and the person so imported and sold shall be free.”
*1 have no difficulty in considering the deed, set
forth in the replication, as amounting to a sale, A complete power over the service and person of the plaintiff, is transferred to the defendant, for so long time as he shall please, which may well include the whole life of the slave, and be, in every respect, equal to an absolute ownership. A transfer depending on the pleasure of the vendee, is an absolute sale. The only question that can then arise in this case, is, whether a sale by executors in the course of administration, be such a sale as is contemplated and prohibited by the act? ’
This part of the act, concerning slaves was made, as its preamble imports, to prevent the further importation of slaves into this state; a policy, the direct counterpart to that contained in one of our colonial statutes, (Colony Laws, vol. 1. 283, 284,) which declared, that all due encouragement ought to be given to the direct importation of slaves. In seeking the true construction of the act, we ought to keep steadily in our eye, the mischief intended to be prevented, which was the foreign traffic in slaves ; and the legislature took a measure decisively calculated to destroy it, by forbiding any person, his factor or agent, to sell any slave so imported, or, in other words, to use him as an article of commerce. The *85 act was hostile to the importation, and to the exportation of slaves, as an article of trade, not to the existence of slavery itself; for it takes care to re-enact and establish the maxim of the civil law, that the children of every female slave shall follow the state and condition of the mother.
If we can then fulfil the object of the law, and, at the same time, prevent the rigorous penalty of the act from working injustice, or impairing the requisite funds to pay debts, v/e, undoubtedly, do all that was within the intent and meaning of the provision. It appears to me, therefore, to be the better interpretation, to consider sales made in the ordinary course of law, and which are free from any kind of collusion, as not within the provision of the act.
While slaves are regarded and protected as property, they ought to be liable to an essential consequence attached to ^property, that of being liable to the payment of debts. If it is otherwise, the debtor is possessed of a false token, and the creditor is deceived. By considering the sale mentioned in the act, as confined to a voluntary disposition of the slave, for a valuable consideration, by the owner himself, we are enabled effectually to reach the mischief in view, the importation of slaves for gain, and we take away every such motive to import them.
I cannot acquiesce in the interpretation, that the importer can sell for his oAvn life. Importations with liberty to sell for the life of the importer, would go far to revive and animate this impolitic and unjust commerce. The tenure of the slave per auter vie, is, indeed, not quite so valuable as for the life of the slave, but still it would be highly valuable, and the commerce would be thrifty.
Upon the death of the importer, the slave cannot be considered as free ; nor do I perceive that the act gives color to such a conclusion. If the slaves belong to the estate, they must go to the executor as assets. He becomes their master, and is liable for their trespasses, and for their maintenance, if infirm ; and it results, inevitably, that he must be able to sell them, because he must answer for them as assets.
For these reasons, I am inclined to think, that slaves so *86 imported, may be held as assets by creditors on execution, and by executors, in the course of administration ; and consequently, that judgment must be for the defendant.
Lewis, J. concurred.
Benson, J.
(After stating the facts in the case.) The question is, whether a slave, so imported, or brought into the state, and remaining unsold, can, on the death of the master or owner, be sold by his executor?
By the law of this state, slavery may exist within it. One person can have property in another, and the slave is part of the goods of the master, and may be sold, or otherwise aliened by him ; or remaining unaliened, is, on his death, ♦transmissible to his executors ; but by the act under consideration, a slave imported or brought in, after the first June, 1785, is not to be sold, as a slave, and if the slave should be so sold, the master, and every other person privy with him to the sale, are liable to a penalty, and the slave becomes free, by force of the sale itself. Though these two effects of the sale are distinct, and the latter, perhaps, capable to be considered as beneficial, yet as they must necessarily ever be concomitant, the same sale, orabt of alienation, always producing them both, and at the sanie time, the entire clause or section is thereby rendered penal, of strict interpretation, and, consequently, constructive sales are to be altogether excluded.
It is further to be premised, that the derogation from the rights of the master, intended by the act, is such, that in order to decide on its nature and extent, it will be requisite to examine and pronounce bn the whole of the residue of the right of alienation, to be deemed left in him, as to a slave so imported or brought in. I, therefore, state, 1. That so much of the benefit intended to the slave, as consists in the chance, if it may be so expressed, of becoming free, in consequence of a sale, is only to the person imported or brought in, as to be distinguished from any participation in it by the issue of the person. So that where the person is a female, the master has a right to sell the issue, born after she shall have been *87 imported, or brought in, and before she herself shall happen to become free, equally as he may sell any other slave.
2. That the act only prohibits a sale, or an alienation for a valuable consideration, as to be distinguished from a gift. a gratuitous alienation, or for good consideration only, and consequently, the master has a right to give away the slave.
■ 3. That the act does not prohibit every sale, but only such sales, where the slave is sold as a slave, to become the slave of the buyer, and where the whole of the estate or interest of the master is intended to pass to the buyer, without any reversion in the master. It must be a sale in *fee, as to be distinguished from a sale for a term depending on a limitation of time, either contingent or definite, when the sale is, as it -were, to expire, and the slave again to revert to the master; but it being obvious, that if the master may sell for a term, and be unrestrained as to the limitation of it, that he may then, by the mere form of the sale, prevent the slave from the benefit of the act, the law will, therefore, implicitly supply the limitation, and which can be no other than the life of the master himself.
4. As the consequence from the two last propositions, the master has a right to sell for his own life, or for any other uncertain term, or for a term of years; and where the sale is for any other term, than the life of the master, if it should not happen to expire, by its own limitation, in his lifetime, it will expire on his death, and be good for his life. In short, he has an estate or interest for his own life only, in the slave ; and if the slave shall have been given away by the master, and by his donee or any other, and so by donee to donee, each will, in like manner, have an estate or interest for his own life in the slave.
This exposition appears, on the whole, to satisfy the act, preferably to any other which has occurred ; for let it suffice to state one consequence only, should the slave be adjudged transmissible to the executor, namely, that the goods of the testator coming to the executor, subject to a power and trust to sell them, he may sell the whole of them , (and he must sell a portion of them, if wanted, to raise moneys for the pay *88 ment of debts and pecuniary legacies;) and it not being possible to deduce or conceive his life, or any other given time, as the limitation of a term for which only he may sel], fie may therefore sell in perpetuity, and if so, then there may he a sale of a slave, as a slave, and neither the seller be liable to the penalty, nor the slave he free, which is contrary to the express provision of the act.
For these reasons, I am of opinion, that the plaintiff is entitled to judgment.
*Lansing, Ch. J. not having heard the argument in the cause, gave no opinion.
Judgment for the defendant.(a)

(a) This act comprises the several then existing acts concerning slaves, and which were passed prior to the 1st June, 1785.

(a) This judgment was afterwards (1802) affirmed, in the court for the correction of errors.